IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:09-CV-186-FL

| | | |
|---|---|---|
| JOSEPH CHRISTIAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| VOUGHT AIRCRAFT INDUSTRIES, | ) | |
| INC. and VOUGHT AIRCRAFT SALARIED | ) | |
| DISABILITY INCOME PLAN, | ) | |
| | ) | |
| Defendants. | ) | |

This matter comes before the court on defendants' motion for summary judgment (DE # 66). Also pending are defendants' motion to strike portions of plaintiff's summary judgment evidence (DE # 78) and motion for sanctions (DE # 87), and plaintiff's motion for extension of time (DE # 80) and amended motions for reconsideration (DE ## 85, 95). These motions have been fully briefed and the issues raised are ripe for ruling.

## STATEMENT OF THE CASE

On April 28, 2009, plaintiff Joseph Christian, proceeding *pro se*, initiated this action against defendant Vought Aircraft Industries, Inc. ("Vought") under the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132. Plaintiff alleges that his disability benefits were improperly calculated, resulting in a significant underpayment of benefits. According to plaintiff, his disability plan grants him benefits equal to sixty percent (60%) of his base salary on the last day worked prior to disability. Plaintiff alleges that an incorrect base salary was used in calculating these benefits, resulting in an underpayment of $55.79 per week from March 8, 1993, through November 30, 2008. Plaintiff seeks an award of $46,611.80 for this fifteen-year period.

Plaintiff moved for default judgment on June 2, 2009, which motion the court denied by order entered June 23, 2009. Plaintiff then filed amended complaint on June 24, 2009, adding Vought Aircraft Salaried Disability Income Plan ("the Plan") as a defendant. Defendants moved to dismiss for insufficient service of process, but withdrew that motion after plaintiff perfected service. On July 17, 2009, defendants moved to dismiss for improper venue. The court denied that motion by order entered August 20, 2009, finding venue to be proper in this district under 29 U.S.C. § 1132(e)(2).

Defendants answered the amended complaint on August 28, 2009. On October 19, 2009, defendants moved to amend their answer to assert a counterclaim against plaintiff. The court granted defendants' motion on November 2, 2009. On November 5, 2009, defendants filed an amended answer and counterclaim, alleging breach of contract under Texas law for plaintiff's violation of a confidential settlement agreement in which he promised not to bring any lawsuit against defendants raising any claim released by the agreement. Defendants seek a declaratory judgment that plaintiff's claim has been released, as well as damages, attorney's fees, and other costs.

On December 8, 2009, plaintiff filed a motion for a more definite statement regarding the affirmative defenses raised by defendants in their amended answer. On December 17, 2009, plaintiff moved to quash subpoenas issued by defendants to plaintiff's physicians and/or psychiatrists. These motions were denied. On January 12, 2010, plaintiff moved for a protective order to limit defendants' discovery into his medical information. On February 26, 2010, and again on March 9, 2010, plaintiff moved to compel defendants to produce certain requested discovery. Defendants responded, and filed their own cross-motion to compel on March 15, 2010. These motions were referred to United States Magistrate Judge James E. Gates, who ordered additional briefing on March 22, 2010.

On April 8, 2010, the magistrate judge denied plaintiff's motion for a protective order and motions to compel, and granted defendants' motion to compel. Plaintiff was ordered to serve on defendants' counsel by April 15, 2010, all medical records submitted by plaintiff or on his behalf to any claims administrator or benefit provider related to any claim under the Plan. On April 12, 2010, plaintiff moved for an extension of time to provide these materials. On April 13, 2010, plaintiff filed a motion for reconsideration of the magistrate judge's order, which motion he amended on April 20, 2010. On April 21, 2010, defendants moved for sanctions for plaintiff's failure to comply with the court's order, seeking dismissal of plaintiff's claims with prejudice. On April 29, 2010, plaintiff filed a second amended motion for reconsideration.

On March 12, 2010, defendants moved for summary judgment, asking the court to deny plaintiff's ERISA claim as a matter of law because the claim is barred by the applicable statute of limitations, the doctrine of waiver and release, and failure to exhaust administrative remedies. Defendants also seek summary judgment in their favor on their counterclaim alleging breach of contract. Plaintiff responded on March 26, 2010. Defendants replied on April 8, 2010.

Also on April 8, 2010, defendants moved the court to strike portions of plaintiff's evidentiary submission filed with plaintiff's response to the motion for summary judgment. Defendants assert that the information had not been disclosed as required by Rule 26(a) of the Federal Rules of Civil Procedure, and is thus barred from use in the summary judgment context pursuant to Rule 37(c). Defendants also ask the court to strike information not properly submitted by affidavit or under oath. Plaintiff responded in opposition on April 16, 2010.

### STATEMENT OF THE UNDISPUTED FACTS

The undisputed facts, in the light most favorable to plaintiff as the non-moving party, are as follows. Plaintiff was hired by Vought in 1985. On March 8, 1993, plaintiff was informed that he

3

was going to be replaced as the manager of contract terminations and that he would be reassigned to a new role as a staff accountant. As part of this reassignment, plaintiff was demoted from grade level 31 to grade level 29. As a result of plaintiff's demotion, his salary decreased from $1,387.13 per week to $1,294.15 per week, effective March 15, 1993.

On March 9, 1993, plaintiff stopped reporting for work, ostensibly due to an unexpected illness. On March 31, 1993, Vought received plaintiff's application for long-term disability benefits under the Plan. Among the documentation supporting plaintiff's application were (1) an evaluation form, dated April 26, 1993, signed by Dr. Bernard Rousch, a psychiatrist, indicating that plaintiff became unable to perform his duties on April 1, 1993, and (2) a physician's statement from plaintiff's personal physician, Dr. Keith Schorn, who stated that plaintiff had visited him on March 15, 1993, and that plaintiff had been diagnosed by Dr. Rousch.

Plaintiff was approved for long-term disability benefits under the Plan effective April 1, 1993. Pursuant to the terms of the Plan, plaintiff received 100% of his salary as benefits for the first few months of his disability, then 60% of his salary thereafter. Plaintiff's benefits were based on a salary of $1,294.15 per week rather than $1,387.13 per week.

On November 26, 1993, plaintiff filed suit against Vought in the United States District Court for the Northern District of Texas, alleging claims of discrimination and retaliation under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq., as well as a state law claim for intentional infliction of emotional distress. Plaintiff and Vought settled the claims through a confidential settlement agreement and release of claims executed April 4, 1997. Under that agreement, Vought agreed to pay plaintiff the sum of $4,500.00 in settlement of all claims, asserted or unasserted, arising out of plaintiff's employment and termination from Vought, as well as $500.00 in settlement of the specific ADEA claim before the district court.

In 1999, plaintiff moved from Texas to North Carolina. In 2001, plaintiff began to send Vought several letters inquiring into the alleged underpayment of benefits that is the focus of the instant lawsuit. For example, in a letter dated April 20, 2001, plaintiff asserts that he went on disability on March 9, 1993, and that his salary was approximately $72,000.00 per year at that time, but that his benefits are based on only $67,000.00 per year. A similar letter was sent by plaintiff on May 4, 2001. On May 20, 2003, Vought received a letter from attorney Brett Myers, in which Mr. Myers demanded on behalf of plaintiff back pay in the amount of the alleged discrepancy and threatened litigation if such back pay was not forthcoming.

Vought received additional letters from plaintiff on March 16, 2006, and April 10, 2006. On June 6, 2006, Vought, through Deputy General Counsel Kevin P. McGlinchey, responded to plaintiff. McGlinchey referenced the terms of the settlement agreement, noting that plaintiff had continued to remain on leave of absence and plaintiff's benefits had continued to accrue for thirteen (13) years, despite the Plan's later amendment to include a two-year maximum leave period. McGlinchey also informed plaintiff that the settlement agreement foreclosed any challenge to the benefits. Vought, through Assistant General Counsel Stacey S. Calvert, sent a second letter to plaintiff on November 10, 2008, once again stating a belief that the benefits were correctly calculated and directing plaintiff to make a formal claim for benefits through the plan administrator.

On November 30, 2008, plaintiff's eligibility for benefits under the Plan and the settlement agreement terminated because he reached sixty-five (65) years of age. On February 23, 2009, plaintiff, through attorney Dan Atkerson, sent Vought a second letter demanding back pay and threatening litigation. Plaintiff, now proceeding *pro se*, initiated this lawsuit on April 28, 2009. As noted, plaintiff seeks back pay of benefits in the amount of $46,611.80.

## DISCUSSION

A.  Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the initial burden of coming forward and demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

The Fourth Circuit has emphasized that "[s]ummary judgment is not solely a defensive mechanism" and that "Rule 56 expressly contemplates the availability of summary judgment to a claimant." Bouchat v. Baltimore Ravens Football Club, Inc., 346 F.3d 514, 521 (4th Cir. 2003). A "claimant" as used in Rule 56 includes a defendant who has asserted counterclaims against the plaintiff. See, e.g., Virtual Works, Inc. v. Volkswagen of Am., Inc., 238 F.3d 264 (4th Cir. 2001) (affirming grant of summary judgment to counterclaiming defendant). So long as the requirements of Rule 56 are met and the claimant meets its ultimate burden of proof or persuasion, there "is no obstacle" to a summary judgment award on the moving party's claim. Bouchat, 346 F.3d at 522.

B.  Defendants' Motion to Strike Portions of Plaintiff's Summary Judgment Evidence

Before turning to defendants' motion for summary judgment, the court must first consider their motion to strike portions of plaintiff's response. Defendants argue that many of plaintiff's

assertions are not supported by record evidence or sworn affidavits, and that defendant's notarized statement at the conclusion of his memorandum in opposition, in which he swears under penalty of perjury that the assertions therein are true and correct, is not a sufficient substitute. Defendants also argue that many of plaintiff's statements are inadmissible as hearsay and that the medical records offered by plaintiff are inadmissible under Rule 37 because they were not disclosed or produced by plaintiff despite specific requests for them. Specifically, defendants seek to strike Exhibits 1, 2, 4, and 5 from plaintiff's response. Defendants also seek to strike all of plaintiff's statements under Rule 37 because he did not disclose himself as a witness.

A motion for summary judgment may be supported or opposed by the pleadings, the discovery and disclosure materials on file, and affidavits. Fed. R. Civ. P. 56(c)(2). An affidavit made in support of or in opposition to a motion for summary judgment "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e)(1). "[S]ummary judgment affidavits cannot be conclusory or based upon hearsay." Evans v. Techs. Applications & Serv. Co., 80 F.3d 954, 962 (4th Cir. 1996) (internal citations omitted). Also barred from consideration is any information or witness failed to be identified as required by Rule 26(a) or (e) "unless the failure was substantially justified or harmless." Fed. R. Civ. P. 37(c)(1); see Salami v. N.C. Agric. & Tech. State Univ., 394 F. Supp. 2d 696, 704-05 (M.D.N.C. 2005).

Plaintiff's failure to disclose himself as a witness does not, without more, foreclose this court's consideration of his statements. Plaintiff's failure was harmless where defendants knew that he was likely to have discoverable information with respect to his ERISA claim, see Fed. R. Civ. P. 26(a)(1)(A)(i), and indeed had the opportunity to depose plaintiff. Nor will the court strike Exhibits

7

1 and 2 (the physician statement of Dr. Schorn and the evaluation form of Dr. Rousch, respectively), which were also offered into evidence by defendants themselves. As defendants note, there are permissible non-hearsay purposes for these materials. However, the court agrees with defendants that Exhibits 1 and 2 do not support plaintiff's argument that his condition rendered him unable to pursue his legal claims until April 28, 2009. No such statement by plaintiff's physicians is contained within those records.

The court also declines to exclude plaintiff's Exhibits 4 and 5, consisting of physician statements by Dr. David M. Reid, dated April 3, 2001, and February 27, 2006, on the basis of Rule 37(c). Although these materials were admittedly not disclosed to defendants under Rule 26(a), plaintiff did provide Dr. Reid as an individual with information that was potentially pertinent to his claim, and appears to argue that he made a good faith effort to supplement his disclosures with this information when he himself received copies of the reports in February 2010. However, as with Exhibits 1 and 2, Exhibits 4 and 5 do not support plaintiff's argument that this condition rendered him unable to pursue his legal claims until April 28, 2009. Because no other permissible purpose for these materials has been suggested by plaintiff, these two exhibits will be stricken as irrelevant.

With respect to plaintiff's statements throughout his memorandum in opposition that he was unable to pursue legal action against defendants until 2009 and that the date of onset of his disability as put forward by Dr. Rousch was a "clerical error," the court agrees with defendants that these statements cannot be considered. First, because plaintiff failed to include factual and evidentiary assertions in a separate affidavit, it is difficult if not impossible to separate argument from fact in plaintiff's memorandum. Even if the alleged facts were included in a separate affidavit, however, they are conclusory and could not properly be considered. See Evans, 80 F.3d at 962. Moreover,

plaintiff's assertions that he was incapable of pursuing legal action until 2009 are flatly contradicted by the overwhelming evidence that is part of the record in this matter, particularly the numerous letters inquiring into the disparity and threatening legal action, and as such as not entitled to any presumption of truth. See Scott v. Harris, 550 U.S. 372, 380 (2007) (holding that court should not adopt a version of the facts which is "blatantly contradicted by the record" in ruling on a motion for summary judgment). For these reasons, the court strikes plaintiff's conclusory and contradictory statements, and will not consider them.

Accordingly, defendants' motion to strike is GRANTED IN PART and DENIED IN PART. Exhibits 1 and 2 are not stricken from the record, but the court will not read into these materials assertions that are not there and will not consider them for any purpose argued by plaintiff that would be barred by application of the hearsay rule. Exhibits 4 and 5 are stricken from the record, and will not be considered by the court. The conclusory statements by plaintiff in his memorandum regarding plaintiff's alleged inability to file suit due to his disability and the alleged "clerical error" in the date of onset of disability given by Dr. Rousch, which are not supported by any affidavit or other factual evidence currently in the record, are also stricken.

C.  Defendants' Motion for Summary Judgment on Plaintiff's ERISA Claim

Defendants offer four grounds to support their motion for summary judgment on plaintiff's ERISA claim. First, defendants contend that plaintiff released any ERISA claim pursuant to the confidential settlement agreement and release of claims executed April 4, 1997. Second, defendants contend that plaintiff's claim is barred by the statute of limitations for ERISA actions. Third, defendants contend that plaintiff has failed to exhaust the administrative remedies available to him. Finally, defendants contend that plaintiff's claim fails on the merits because the calculation of

9

benefits is correct under the terms of the Plan. Because the court finds that plaintiff's claim is barred on procedural grounds, as set forth below, it does not reach the merits of plaintiff's claim.

1. Confidential Settlement Agreement and Release of Claims

Defendants ague that the confidential settlement agreement and release of claims executed April 4, 1997, bars plaintiff's ERISA claim. Defendants note that the release of claims contained in the settlement agreed is a broadly worded, all-encompassing release of "all claims" arising out of plaintiff's employment with Vought and termination therefrom. Plaintiff, on the other hand, maintains that the release pertains only to his age discrimination claim brought before the Northern District of Texas. Plaintiff also argues that the Plan is a distinct legal entity amenable to suit, and that the Plan is not a party to the release. Finally, plaintiff argues that he did not knowingly and voluntarily waive his right to sue under ERISA because he did not know of the claim when the waiver was signed.

It is well-settled that a broad release of claims related to an employment relationship is effective to release an ERISA claim. In Chaplin v. Nationscredit Corp., 307 F.3d 368, 370-73 (5th Cir. 2002), the Fifth Circuit held that a release from "any and all claims . . . includ[ing] claims based in tort, contract or alleged violation of any federal, state or municipal statute . . . [and] includ[ing] . . . all claims arising by reason of or in any way connected with [plaintiff's] employment relationship" bars a claim for ERISA benefits, even if ERISA is not specifically mentioned. Similarly, in District 29, United Mine Workers of Am. v. New River Co., 842 F.2d 734, 736 (4th Cir. 1988), the Fourth Circuit held that a settlement agreement containing "broad language" releasing an employer from "any and all actions, causes of action, and claims, including those sounding in contract arising as a result of [plaintiff's] employment . . . certainly encompasses [plaintiff's] action

against [his employer] for health benefits [under ERISA]." In a more recent but unpublished case, the Fourth Circuit held that a "release of all claims against [an employer] arising out of the former employment contract," where the employee "covenant[ed] not to sue [his employer] for any action of any nature," including an express waiver of "all rights under local, state, and federal law," barred an action for violation of ERISA's notice provisions. See Laymon v. Kroger Co., 924 F.2d 1052, 1991 WL 15431 at *2-3 (4th Cir. Feb. 12, 1991) (unpublished table decision).

The agreement executed by plaintiff and Vought in this case is as broad as, if not broader than, the releases at issue in Chaplin, District 29, and Laymon. Pursuant to the agreement, Vought agreed to pay plaintiff $4,500.00 "in full settlement of all claims, demands, causes of action, whether asserted or unasserted, known or unknown, arising out of [plaintiff's] work with Vought [or] his termination from Vought . . . ." (Defs.' Ex. M ¶ 2.a.) In return for this compensation, the agreement states that plaintiff:

> IRREVOCABLY AND UNCONDITIONALLY RELEASES, ACQUITS AND FOREVER DISCHARGES Vought and its current and former parent, predecessors, successors, assigns, subsidiaries, affiliates and partnerships, and the current and former owners, shareholders, directors, officers, agents, executors, administrators, representatives, insurers, independent contractors and employees of Vought or its current and former successors, assigns, subsidiaries, affiliates and partnerships . . . of and from any and all claims, controversies, demands, suits, actions, causes of action, [and] complaints . . . of every kind and nature whatsoever, whether heretofore or hereafter accruing, whether now known or not known to the Parties, or whether foreseen or unforseen, which [plaintiff] now has, may have, or claims to have for, or because of any matter or thing done, omitted or suffered to be done at any time prior to or on the date this Agreement is executed by the Parties, including, but not limited to, any claims arising out of [plaintiff's] employment with Vought and termination therefrom, . . . and any . . . federal, state or local law, whether statutory or common law and from any other matter of any kind.

(Id. ¶ 5.) The agreement states that plaintiff "further covenants that he will bring no lawsuit against [Vought] raising any claim released by [plaintiff] in this agreement." (Id.)

11

The release executed by plaintiff unmistakably contemplates the ERISA action brought here. The agreement references (1) "any and all claims . . . of every kind and nature," (2) arising at any time, regardless of whether known or foreseen at the time of the agreement, (3) explicitly including claims arising out of plaintiff's employment with and termination from Vought, and (4) explicitly including any claims arising under federal statutory law. See Chaplin, 307 F.3d at 370-73; District 29, 842 F.2d at 736; Laymon, 1991 WL 15431 at *2-3. Moreover, the specific ERISA claim for miscalculation of benefits was already available to plaintiff at the time of the settlement because he was already receiving disability benefits under the Plan at that time and the alleged miscalculation had already occurred, such that plaintiff could have made a claim for benefits.

Plaintiff asserts that his waiver of his ERISA claim was not knowing and voluntary under the totality of the circumstances. See Smart v. Gillette Co. Long-Term Disability Plan, 70 F.3d 173, 181 (1st Cir. 1995) (holding that ERISA claims are validly waived only if the waiver is knowing and voluntary under the totality of the circumstances); Laniok v. Advisory Comm. of the Brainerd Mfg. Co. Pension Plan, 935 F.2d 1360, 1367 (2d Cir. 1991) (same); see also District 29, 842 F.2d at 737 (holding that an employee may knowingly and voluntarily waive health benefits under ERISA). This argument is without merit. Plaintiff affirmed in the text of the settlement agreement itself that he had reviewed the agreement with legal counsel and entered into the waiver "knowingly and voluntarily" with benefit of "full disclosure of all the facts and circumstances surrounding the execution of [the] [a]greement and its legal effect." (Defs.' Ex. M ¶ 18.) Other than the inadmissible and self-serving arguments contained in his response in opposition, plaintiff has put forward no evidence that would suggest otherwise. Nor does the evidence on the record demonstrate that plaintiff was suffering from decreased mental capacity at the time the agreement was signed.

12

Moreover, as discussed in more detail below, plaintiff was already receiving disability benefits at the time of the agreement and the amount of his benefits were already being calculated based on an allegedly incorrect salary, such that plaintiff could have and should have known of any alleged underpayment at that time. The court also notes that plaintiff received sufficient consideration for his waiver.[1] The court cannot say that a bargain in which plaintiff received a certain up-front payment of $4,500.00 in exchange for relinquishing an uncertain benefits claim for $46,611.80 in the future is evidence of a lack of knowing and voluntary waiver. Under the totality of the circumstances, the court finds that plaintiff's waiver was in fact knowing and voluntary.

Finally, plaintiff argues that the waiver is unenforceable as to his suit against the Plan, which is a separate legal entity under ERISA. See 29 U.S.C. § 1132(d)(1). However, the fact that the Plan has a distinct legal identity for purposes of ERISA does not mean that the settlement agreement is ineffective to release the Plan as well as Vought. Vought is the named fiduciary and administrator of the Plan, which is unfunded such that benefits are paid directly from Vought's general assets. (Defs.' Ex. B., Collier Decl. ¶ 5. & Ex. 1.) The release at issue applies broadly to "Vought and its . . . assigns, subsidiaries, affiliates[,] . . . partnerships, . . . agents, executors, administrators, representatives, insurers, independent contractors and employees." (Defs.' Ex. M ¶ 5.) As other courts have noted, unfunded plans are "affiliates" of the employer who operates the plan and pays benefits from its general funds. See Goepfert v. Trustmark Ins. Co., 541 F. Supp. 2d 1052, 1055-56 (E.D. Wis. 2008); Linder v. BYK-Chemie USA, Inc., No. 3:02-CV-1956, 2006 WL 648206 at *10-

---

[1] Indeed, as defendants point out, plaintiff received a substantial benefit because of the way his employment was terminated pursuant to the settlement agreement. But for the specific language in the settlement agreement by which Vought agreed to continue paying plaintiff disability benefits so long as he remained eligible pursuant to the terms of the Plan, plaintiff's benefits would have ceased due to a subsequent amendment that limits the number of years that an employee can remain on disability before being terminated.

13

11 (D. Conn. Mar. 10, 2006); Howell v. Motorola, Inc., No. 03-C-5044, 2005 WL 2420410 at *7 (N.D. Ill. Sept. 30, 2005); Bordonaro v. Union Carbide Corp., No. 01-1177, 2002 WL 32824 at *2-3 (E.D. La. Jan. 11, 2002); see also Slaughter v. AT&T Info. Sys., Inc., 905 F.2d 92, 94 (5th Cir. 1990) (barring on *res judicata* grounds a later suit against an unfunded ERISA plan where plaintiff had already litigated claim against employer because the plan "has no existence apart from [the employer] and is merely a nominal defendant" and "the entity from which [plaintiff] seeks recovery is really [the employer]"). But see Groska v. N. States Power Co. Pension Plan, Civ. No. 05-114, 2007 WL 2791119 at *8 & n.2 (D. Minn. Sept. 24, 2007). As such, the release here covers the Plan as well as Vought, and plaintiff's argument to the contrary is without merit.

Accordingly, for the reasons set forth above, the court finds that plaintiff's ERISA claim against both Vought and the Plan is barred by the settlement agreement and general release executed April 4, 1997. Defendants' motion for summary judgment on plaintiff's claim is GRANTED.

    2.    Statute of Limitations and Failure to Exhaust Administrative Remedies

Even if plaintiff's claim was not released by the settlement agreement, the court would still find that plaintiff's claim is barred by the statute of limitations and plaintiff's failure to exhaust administrative remedies. These procedural defects offer an alternative rationale for granting defendants summary judgment on plaintiff's ERISA claim.

ERISA does not explicitly mention a statute of limitations, so courts borrow the state law limitations period for breach of contract, which most closely resembles an ERISA claim. Dameron v. Sinai Hosp. of Balt., Inc., 815 F.2d 975, 981 (4th Cir. 1987); see also Trull v. Dayco Prods., LLC, 178 F. App'x 247, 248 (4th Cir. 2006) (per curiam) (unpublished) (noting that in an ERISA case, the court uses the "analogous limitations period of the forum state's law"). In North Carolina, the

14

limitations period for a contract action is three years.[2] See N.C. Gen. Stat. § 1-52(1). The limitations period does not begin to run until a claim of benefits has been made and formally denied. Rodriguez v. MEBA Pension Trust, 872 F.2d 69, 72 (4th Cir. 1989). In practice, "[t]his means that the statute of limitations begins to run at the moment when the plaintiff may seek judicial review, because ERISA plaintiffs must generally exhaust administrative remedies before seeking judicial relief." White v. Sun Life Assurance Co. of Can., 488 F.3d 240, 246 (4th Cir. 2007) (citing Makar v. Health Care Corp. of Mid-Atlantic (Carefirst), 872 F.2d 80, 81 (4th Cir. 1989)).

It is not disputed that plaintiff did not formally engage in any administrative review process, but rather sent Vought a series of letters claiming that his benefits had been wrongly calculated. In Cotter v. E. Conference of Teamsters Retirement Plan, 898 F.2d 424, 429 (4th Cir. 1990), the Fourth Circuit suggested that "in the absence of any . . . formal claim for the benefits at issue in [a lawsuit]," the statute of limitations may begin to run at "the time at which some event other than a denial of benefits should have alerted [plaintiff] to his entitlement to the benefits he did not receive . . . ." Here, where plaintiff's claim is based on a right to receive benefits based on a particular weekly salary calculation, he should have been alerted to his entitlement to additional benefits upon receiving the first paycheck in 1993 based on a lesser salary amount. See Miller v. Fortis Benefits Ins. Co., 475 F.3d 516, 521 (3d Cir. 2007). Indeed, it appears that plaintiff had actual knowledge of the miscalculation when he began to send letters to Vought in 2001, eight years before filing suit. Because the applicable statute of limitations period is only three years, plaintiff's claim is untimely under the teaching of Cotter and Miller.

---

[2] Defendants suggest the four-year limitations period for a breach of contract under Texas law. Although defendants are located in Texas, they have not provided the court with any authority for borrowing a state statute of limitations other than that of the forum state. The court notes that plaintiff's claim is untimely under either regime.

15

Even assuming that a formal request and denial is required to begin the statute of limitations, the failure to have made such a formal request dooms plaintiff's claim for failure to exhaust administrative remedies. White, 488 F.3d at 246. While this would usually result in a dismissal of the action without prejudice, in cases where plaintiff can no longer engage in the administrative process due to that process's internal rules, dismissal with prejudice is warranted. Gayle v. United Parcel Serv., Inc., 401 F.3d 222, 230 (4th Cir. 2005). The Plan explicitly provides for a review of a denial of benefits within sixty (60) days of the denial. (Defs.' Ex. B, Collier Decl., Ex. 1 at § 4.4.) The complaint and answer in this case are, at minimum, a formal request for and denial of benefits. Where sixty (60) days has long-since passed since defendants' answer, the failure to timely exhaust remedies is a bar to plaintiff's claim which would justify dismissal with prejudice.

D.  Defendants' Motion for Summary Judgment on Their Counterclaim

Defendants also seek summary judgment on their counterclaim for breach of contract. Defendants contend that plaintiff breached the settlement agreement and release by filing the instant lawsuit. Defendants seek to recover the amount paid to plaintiff under the settlement agreement for the general release (i.e., $4,500.00), as well as attorneys' fees incurred in the defense of this lawsuit. Although the counterclaim is raised by both defendants, any recovery would go to Vought, as the Plan is no more than a nominal party which is not separately funded.

Because the plan explicitly so provides, defendants' breach of contract action is governed by Texas law. (See Defs.' Ex. M ¶ 19.) Under Texas law, "[t]he essential elements of a suit for breach of contract are (1) the existence of a valid contract; (2) that the plaintiff performed or tendered performance; (3) the defendant breached the agreement; and (4) the plaintiff was damaged as a result of the breach." Landrum v. Devenport, 616 S.W.2d 359, 361 (Tex. Civ. App. 1981). To recover

attorneys' fees, a litigant must prevail on its breach of contract claim and recover damages. MBM Fin. Corp. v. Woodlands Operating Co., Ltd. P'ship, 292 S.W.3d 660, 666 (Tex. 2009).

The first three elements are easily met here. As to the first element, the court has already concluded that the settlement agreement was a valid contract.[3] As to the second element, there is no suggestion that Vought did not uphold its end of the bargain by tendering $4,500.00 to plaintiff. Finally, as to the third element, the instant lawsuit is a breach of plaintiff's obligations under the contract. The court has already discussed in great detail the manner in which the instant ERISA lawsuit has been released, and plaintiff further "covenant[ed] that he [would] bring no lawsuit against [Vought or the Plan] raising any claim released by [plaintff] in this Agreement." (Defs.' Ex. M ¶ 5.) By bringing this lawsuit, plaintiff has breached this provision in the agreement.

With respect to the fourth element, the contract itself provides that the "damages" to be paid by plaintiff upon a breach are "the settlement amount paid to him." (Id. ¶ 12.) This requirement appears to take the form of a liquidated damages provision. See Flores v. Millennium Interests, Ltd., 185 S.W.3d 427, 431 (Tex. 2005) ("The term 'liquidated damages' ordinarily refers to an acceptable measure of damages that parties stipulate in advance will be assessed in the event of a contract breach."). Texas law allows liquidated damages provisions, so long as the "damages for the prospective breach of contract are difficult to measure and the stipulated damages are a reasonable estimate of actual damages . . . ." Id. "Whether a contractual provision is an enforceable liquidated damages provision or an unenforceable penalty is a question of law for the court to decide." Phillips v. Phillips, 820 S.W.2d 785, 788 (Tex. 1991).

---

[3] A contract may be shown by "an exchange of obligations of value of each contracting party, reciprocally or mutually induced." Tex. Gas Utils. Co. v. Barrett, 460 S.W.2d 409, 412-13 (Tex. 1970). Plaintiff relinquished future legal action against defendants, with recovery uncertain, in exchange for a certain sum of $4,500.00.

17

The liquidated damages provision at issue here essentially requires plaintiff to return the consideration paid by defendants. The actual damages related to plaintiff's breach are difficult to measure, but the return of consideration appears to be a reasonable *ex ante* estimate. Indeed, "the measure of damages [in a rescission case] is the return of the consideration paid, together with such further special damage or expense as may have been reasonably incurred by the party wronged on account of the contract." Thomas v. State, 226 S.W.3d 697, 709 (Tex. App. 2007); see also Smith v. Nat'l Resort Cmtys., Inc., 585 S.W.2d 655, 660 (Tex. 1979). Although defendants' action does not seek rescission, the measure of damages available in such a suit informs the reasonableness of the liquidated damages provision in the contract at issue here.

In addition to these liquidated damages, defendants seek costs and attorneys' fees. The agreement itself states that "[plaintiff] agrees to indemnify and hold Vought harmless from and against any and all loses, costs, . . . attorneys' fees, or damages incurred by [Vought and the Plan] arising out of any breach of this Agreement . . . ." (Id.) Moreover, because defendants have prevailed on their breach of contract claim and have been awarded damages, they may recover costs and attorneys' fees under Texas law.[4] See Tex. Civ. Prac. & Rem. Code § 38.001(8); MBM Fin. Corp., 292 S.W.3d at 666.

Accordingly, the court finds that an award of reasonable costs and attorneys' fees is appropriate here. Defendants are directed to submit proof to the court, through separate motion, of such costs and attorneys' fees they believe to have been reasonable and necessary. See Stewart Title

---

[4] "Attorney's fees mandated by state statute are available when a federal court sits in diversity . . . [or exercises] pendent jurisdiction [over a state-law claim]." Cotton v. Slone, 4 F.3d 176, 180 (2d Cir. 1993); see also Transamerica Occidental Life Ins. Co. v. Sanders, 91 F.3d 134, 1996 WL 378310, at *1 (4th Cir. July 8, 1996) (unpublished table decision); Cantrell v. M & M Chevrolet, Inc., 17 F.3d 1433, 1994 WL 52395, at *2 (4th Cir. Feb. 17, 1996) (unpublished table decision).

18

Case 5:09-cv-00186-FL   Document 102   Filed 10/15/10   Page 18 of 20

Guar. Co. v. Sterling, 822 S.W.2d 1, 10 (Tex. 1991) ("[T]he party seeking to recover attorney's fees carries the burden of proof . . . [to show] those fees that are 'reasonable and necessary' for the prosecution of the suit."); see also Arthur Andersen & Co. v. Perry Equip. Corp., 945 S.W.2d 812, 818 (Tex. 1997) (setting forth eight factors to be used in considering the reasonableness of the requested fee). This motion must be filed within fourteen (14) days of the entry of judgment in this case . See Fed. R. Civ. P. 54(d).

In sum, the court finds that the undisputed evidence proffered by the parties establishes that each of the elements of a successful breach of contract action have been demonstrated by defendant. Defendant is entitled under Texas law to $4,500.00 in liquidated damages, as set forth in the settlement agreement, as well as reasonable costs and attorneys' fees. Accordingly, defendants' motion for summary judgment on their breach of contract action is GRANTED.

E.   Ancillary Motions Related to Plaintiff's Discovery Obligations

Still pending are defendants' motion for sanctions and plaintiff's motion for extension of time and amended motions for reconsideration. These motions all relate to plaintiff's failure to provide certain discovery as ordered by the magistrate judge. Because the sanction sought by defendant is dismissal with prejudice, the court's granting of their motion for summary judgment moots that request. Plaintiff's motions are also moot where this case is no longer pending. Accordingly, these motions are all DENIED AS MOOT.

**CONCLUSION**

For the reasons set forth above, defendants' motion for summary judgment (DE # 66) is GRANTED. Defendants are entitled to judgment in their favor both on plaintiff's ERISA claim and on defendants' breach of contract counterclaim. Plaintiff's ERISA claim was released pursuant to

19

Case 5:09-cv-00186-FL   Document 102   Filed 10/15/10   Page 19 of 20

a confidential settlement agreement, and plaintiff breached that agreement. Plaintiff shall have and recover nothing on his ERISA claim. Defendants shall have and recover the sum of $ 4,500.00 from plaintiff as liquidated damages on defendants' breach of contract counterclaim. Defendants are directed to separately move for reasonable costs and attorneys fees within fourteen (14) days of the entry of judgment.

Defendants' motion to strike portions of plaintiff's summary judgment evidence (DE # 78) is GRANTED IN PART and DENIED IN PART. Defendants' motion for sanctions (DE # 87), plaintiff's motion for extension of time (DE # 80), and plaintiff's amended motions for reconsideration (DE ## 85, 95) are DENIED AS MOOT. The Clerk of Court is DIRECTED to enter judgment for defendants and to close the case.

SO ORDERED, this the 14 day of October, 2010.

                                LOUISE W. FLANAGAN
                                Chief United States District Judge