IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:09-CV-186-FL

| | | |
|---|---|---|
| JOSEPH CHRISTIAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| VOUGHT AIRCRAFT INDUSTRIES, | ) | |
| INC. and VOUGHT AIRCRAFT SALARIED | ) | |
| DISABILITY INCOME PLAN, | ) | |
| | ) | |
| Defendants. | ) | |

This matter comes before the court on defendants' motion for attorneys' fees and costs (DE # 104). Plaintiff has responded in opposition, and the issues raised now are ripe for adjudication. For the reasons that follow, defendants' motion in granted in part and denied in part. The court will award reasonable and necessary attorneys' fees and costs, but does not find the full amount requested by defendants to be appropriate in the circumstances presented.

## BACKGROUND

*Pro se* plaintiff initiated this action under the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132, by filing complaint in this court on April 28, 2009. Plaintiff later amended his complaint on June 24, 2009. In his amended complaint, plaintiff alleged that defendants improperly calculated his disability benefits under ERISA. Plaintiff sought $46,611.80 in back pay over a period spanning fifteen (15) years.

Defendants answered the amended complaint on August 28, 2010, denying that plaintiff's benefits were improperly calculated and raising a number of affirmative defenses. Defendants later

were granted leave to amend their responsive pleading to assert a counterclaim for breach of contract under Texas law. Defendant's amended answer and counterclaim was filed November 5, 2009.

On March 12, 2010, defendants moved for summary judgment on plaintiff's ERISA claim and on their breach of contract counterclaim. Plaintiff timely responded in opposition, and defendants replied. By order entered October 15, 2010, the court granted defendants' motion. The Clerk of Court issued the court's judgment in favor of defendants on October 20, 2010.

In its order, the court held that the settlement agreement executed by the parties in 1997 barred plaintiff's ERISA claim, that the claim was otherwise untimely, and that plaintiff failed to exhaust administrative remedies. The court further held that plaintiff had breached the settlement agreement by filing his ERISA action, and that under Texas law defendants were entitled to damages in the amount of $4,500.00, plus reasonable and necessary attorneys' fees. The court directed defendants to separately move for attorneys' fees within fourteen (14) days of entry of judgment.

Defendants filed the instant motion for reasonable costs and attorneys' fees on November 2, 2010. They seek to recover a sum in the amount of $133,689.50 as attorneys' fees, including $118,867.00 for legal services provided by Morgan Lewis & Bockius, LLP ("Morgan Lewis"), and $14,822.50 for legal services provided by Ogletree, Deakins, Nash, Smoak & Stewart, LLP ("Ogletree").[1] Defendants have also submitted a bill of costs in the amount of $4,996.21. Plaintiff responded in opposition to defendants' request on November 15, 2010, arguing that an award of this magnitude would be unreasonable.

---

[1] Based on the evidence submitted to the court, it appears that defendants spent a total of $133,749.50 in legal fees. Defendants seem to have omitted $60.00 in fees billed by Ogletree. The court also notes that defendants seek an additional $10,000.00 in contingent fees in the event of an appeal by plaintiff. Although plaintiff filed a notice of appeal of the court's judgment on November 18, 2010, the court declines to award any attorneys' fees for the appeal of this matter where defendants have not offered a basis to do so at this time.

## DISCUSSION

A.  Bill of Costs

Under Rule 54(d)(1), a prevailing party may move for an award of costs. Defendants here have submitted a bill of costs seeking $4,996.21. Specifically, defendants seek (1) $180.00 in fees of the clerk; (2) $884.30 in fees for necessary transcripts; (3) $101.40 for the making of necessary copies; (4) $5.00 in docket fees; and (5) $4,825.51 in computerized legal research fees. For the reasons that follow, the court taxes as costs only $990.70 of the amount claimed.

The court begins with the request for computerized legal research fees. Absent a more specific federal statute, the court may tax as costs only those items specified by 28 U.S.C. § 1920. See Arlington Cent. Sch. Dist. Bd. of Educ. v. Murphy, 548 U.S. 291, 301 (2006); Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 441-42 (1987). Although computerized legal expenses may be considered as part of an award of "attorneys' fees," they are not "costs" under § 1920. See Attrezzi, LLC v. Maytag Corp., 436 F.3d 32, 43 (1st Cir. 2006); Haroco, Inc. v. Am. Nat'l Bank & Trust Co. of Chicago, 38 F.3d 1429, 1440-41 (7th Cir. 1994). As such, these expenses may not be awarded under Rule 54(d).

The court turns next to defendants' claim for $180.00 in fees of the clerk. Based on the exhibit attached to their affidavit in support of the bill of costs, defendants seem to be claiming this fee as it relates to a *pro hac vice* application for defendants' counsel for an unrelated case in the Southern District of California. It is not this district's practice to require out of district counsel to appear *pro hac vice* or to incur any fee when appearing with local counsel. See Local Civil Rule 83.1(e). Accordingly, it appears that this $180.00 was claimed in error, and will not be awarded.

The remaining costs claimed by defendants appear to be justified by § 1920 and the circumstances of this case. Based on the affidavit submitted by defense counsel, defendants spent

3

$884.30 in obtaining necessary transcripts, $101.40 for the making of necessary copies, and $5.00 in docket fees under § 1923(a). Accordingly, the court taxes costs in the amount of $990.70.

B.   Attorneys' Fees

As the court noted in its summary judgment order, a litigant who prevails on its breach of contract claim and recovers damages may recover reasonable attorneys' fees under Texas law. See Tex. Civ. Prac. & Rem. Code § 38.001(8); MBM Fin. Corp. v. Woodlands Operating Co., Ltd. P'ship, 292 S.W.3d 660, 666 (Tex. 2009).[2] If attorneys' fees are allowed under § 38.001(8), the court does not have discretion to deny them. See Smith v. Patrick W.Y. Tam Trust, 296 S.W.3d 545, 547 (Tex. 2009). However, the reasonableness of such fees is within the discretion of the finder of fact. Id.

The party seeking recovery of attorneys' fees has the burden to show that they were "reasonable and necessary." See Stewart Title Guar. Co. v. Sterling, 822 S.W.2d 1, 10 (Tex. 1991). In determining the reasonableness of attorneys' fees, a number of factors are considered, including:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly; (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer; (3) the fee customarily charged in the locality for similar legal services; (4) the amount involved and the results obtained; (5) the time limitations imposed by the client or by the circumstances; (6) the nature and length of the professional relationship with the client; (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and (8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

Arthur Andersen & Co. v. Perry Equip. Corp., 945 S.W.2d 812, 818 (Tex. 1997) (citing Tex. Disciplinary R. Prof. Conduct 1.04).

---

[2] State law governs the award of attorneys' fees for a state law breach of contract claim brought in federal court. See Cotton v. Slone, 4 F.3d 176, 180 (2d Cir. 1993); see also Transamerica Occidental Life Ins. Co. v. Sanders, 91 F.3d 134, 1996 WL 378310, at *1 (4th Cir. July 8, 1996) (unpublished table decision); Cantrell v. M & M Chevrolet, Inc., 17 F.3d 1433, 1994 WL 52395, at *2 (4th Cir. Feb. 17, 1996) (unpublished table decision).

Although attorneys' fees are generally awarded by the jury, a court may also do so based on the same factors when faced with uncontradicted testimony. See Young v. Qualls, 223 S.W.3d 312, 314 (Tex. 2007) (per curiam); Ragsdale v. Progressive Voters League, 801 S.W.2d 880, 881-82 (Tex. 1990). "[A] trial court is not required to receive evidence on each of these factors[,]" and may instead "look at the entire record, the evidence presented on reasonableness, the amount in controversy, the common knowledge of the participants as lawyers and judges, and the relative success of the parties." In re A.B.P., 291 S.W.3d 91, 98 (Tex. App. 2009); cf. Land Rover U.K., Ltd. v. Hinojosa, 210 S.W.3d 604, 607 (Tex. 2006) (governing standard of review on appeal).

The undersigned has received evidence on a number of the factors enumerated by the Texas Supreme Court in Arthur Andersen, has considered the record and the amount in controversy, and has further taken into account those factors governing a discretionary award of attorneys' fees under ERISA law. As set forth in greater detail below, the court finds that an award of $25,426.50 is appropriate in the circumstances presented here. Although this represents a drastic reduction from the attorneys' fees claimed and actually paid by defendants, a higher award is not justified.

1.  Time and Labor Expended, Novelty of the Legal Issue, and Skill Required

Defendants retained the services of Ogletree, a national law firm specializing in labor and employment law, and Morgan Lewis, a large international law firm. The evidence before the court shows that this legal team expended over three hundred and eighty-five (385) hours working on this case. Ellen L. Perlioni, a partner at the Dallas office of Morgan Lewis, billed 135.8 hours. Jason Elliott, a mid-level associate at the Dallas office of Morgan Lewis, billed 181.4 hours. Tanya Musick and John Nabers, paralegals at the Dallas office Morgan Lewis, billed an additional 21.9 hours. Kevin Joyner, a shareholder at Ogletree's Raleigh office, billed 45.6 hours. Michael

5

McKnight, an associate at Ogletree in Raleigh, billed 0.8 hours. Ashley Wooten, a paralegal with Ogletree's Raleigh office, billed 0.1 hours.

Plaintiff contends that the time and labor expended by the attorneys is not justified by the circumstances of this case, and the court agrees. As plaintiff notes, there were no hearings, no trial, and only one deposition in this matter. Moreover, not only were defendants aware of the 1997 settlement agreement that formed the crux of their counterclaim and affirmative defense, they had informed plaintiff on a number of occasions between 2001 and 2009 that the agreement barred a claim under ERISA. As such, defendants had already formed the primary legal argument relied upon throughout these proceedings before plaintiff filed suit. Indeed, as plaintiff rightly points out, thirty (30) of the hours claimed by defendants were expended before plaintiff filed suit.

Defendants argue that the hours spent in this case are justified by plaintiff's aggressive arguments and tactics, as well as the fact that ERISA is a complex federal statute. However, these two factors do not justify spending more than 385 hours on this case. First, although some of *pro se* plaintiff's actions undoubtedly required defendants' attorneys to spend additional time and labor on this case, much of this time could have been saved by an early motion for summary judgment or an early motion for judicial intervention to prevent such abuses. Moreover, plaintiff was not the only party whose actions increased the hours worked by defendants' counsel. Defendants' motion for improper venue and their failure to assert their counterclaim in their original answer also contributed to the hours claimed by counsel.

Second, although ERISA is generally understood to be a complex federal statute, those complexities were not implicated in this case. Indeed, defendants' claim for attorney's fees is premised on their Texas law counterclaim, not plaintiff's ERISA action. A breach of contract action,

6

particularly the one at issue here, is not particularly complex. But even taking plaintiff's ERISA claim into account, defendants were not required to comb through an administrative record or to even reach the merits of plaintiff's claim. Instead, the 1997 settlement agreement already in defendants' possession, the statute of limitations for ERISA claims, and the administrative exhaustion requirement all barred plaintiff's claims.

The court has considered defendants' possession of the 1997 settlement agreement, the hours expended prior to the filing of the complaint in this action, the additional time required when facing a *pro se* litigant, the additional time spent by defendants which cannot fairly be attributed to plaintiff, and the nature of defendants' counterclaim and plaintiff's ERISA action. The court has also carefully reviewed the legal invoices submitted by defendants, and has taken into account the usual time requirements for responding to a complaint, defending against a motion for entry of default, conducting discovery, and drafting a motion for summary judgment. In light of these considerations, the court finds that it would be reasonable to spend no more than one hundred (100) hours in the circumstances presented here. Assuming that the division of labor among the legal team were to remain the same as that actually claimed, those hours would be apportioned as follows: 47 hours by partners and shareholders, 47.3 hours by associates, and 5.7 hours by paralegals.

2. The Fee Customarily Charged in the Locality

The court is directed to take into consideration "the fee customarily charged in the locality for similar legal services." See Arthur Andersen, 945 S.W.2d at 818. It is unclear from this language whether the relevant locality is that where the attorneys are located, or where the cause of action is pending. Although Texas law is not instructive, in the Fourth Circuit "the hourly rate is [generally] determined by the community in which the court resides." Rivers v. Ledford, 666 F.

7

Supp. 2d 603, 608 (E.D.N.C. 2009) (citing Rum Creek Coal Sales, Inc. v. Caperton, 31 F.3d 169, 178-79 (4th Cir. 1994)). As such, the court will look to the reasonableness of the hourly fees in this case by looking to those usually charged in the Eastern District of North Carolina.[3]

The fees charged by Morgan Lewis, while perhaps reasonable in Dallas, are not reasonable in this market. Even those fees charged by Ogletree are higher than the rates usually seen in this district. See, e.g., Dodeka, LLC v. AmrolDavis, No. 7:10-CV-17-D, 2010 WL 3239117 at *2 (E.D.N.C. Aug. 16, 2010) (finding a fee of $225.00 to be reasonable); Rivers, 666 F. Supp. 2d at 609 (finding a fee of $300.00 to be reasonable); Stewart v. Avaya, Inc., No. At *6 (E.D.N.C. Sept. 19, 2008) (finding a fee of $255.00 to be reasonable). Moreover, although the affidavits of defendants' attorneys state that their hourly rates are comparable to those charged by similar firms in the area, such affidavits generally are insufficient to establish the fee customarily charged in such cases. Cf. Ragsdale, 801 S.W.2d at 881-82 (noting that even uncontradicted testimony of interested party regarding attorneys' fees need not be taken as true if unreasonable or unwarranted, especially if opposing party has no means to contradict testimony); accord Westmoreland Coal Co. v. Cox, 602 F.3d 276, 289 (4th Cir. 2010) (requiring evidence of prevailing market rates beyond attorney's own affidavits); Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 245 (4th Cir. 2009) (same).

Based on the affidavit submitted by Kevin Joyner, and in light of the court's own experience with the market rates for attorneys' fees in the Eastern District of North Carolina, the court finds that an hourly fee of $300.00 for a shareholder or partner, $225.00 for an experienced associate, and

---

[3] The court may look to rates in other markets where, for example, the complexity and specialized nature of the case mean that no experienced attorney is available locally and it is reasonable in choosing an attorney from elsewhere. Rum Creek Coal Sales, 31 F.3d at 179 (citing Nat'l Wildlife Federation v. Hanson, 859 F.2d 313, 317 (4th Cir. 1988)). There is no indication that Ogletree, a specialized employment litigation firm which also has offices in Texas, would not have been qualified to handle both the ERISA claim and breach of contract counterclaim.

8

Case 5:09-cv-00186-FL Document 113 Filed 12/29/10 Page 8 of 12

$120.00 for a paralegal are appropriate here. Based on the hours figures noted by the court in the previous section, a total fee of $25,426.50 is reasonable based on the first two Arthur Andersen factors considered by the court.[4]

3.   Amount Involved and Results Obtained

Under Texas law, the court considers the amount of damages actually awarded to the party seeking attorneys' fees in determining the reasonableness of such fees. See Smith, 296 S.W.3d at 548 (describing "the amount of money involved" as the amount awarded by the jury rather than the amount sought in the complaint); Wayland v. City of Arlington, 711 S.W.2d 232, 233 (Tex. 1986) (per curiam) ("One of the factors in determining the reasonableness of attorney's fees is the amount of damages awarded."). Moreover, despite defendants' arguments to the contrary, Texas courts have held that "[a]ttorney's fees must bear some reasonable relationship to the amount in controversy." USAA Cnty. Mut. Ins. Co. v. Cook, 241 S.W.3d 93, 103 (Tex. App. 2007) (citing Cordova v. Sw. Bell Yellow Pages, Inc., 148 S.W.3d 441, 448 (Tex. App. 2004)).

Defendants note that because they were awarded full and complete relief, they should be awarded complete recovery of attorneys' fees actually incurred. But although defendants obtained the full measure of damages sought in this case, those damages amounted to only $4,500.00. The amount claimed by plaintiff is also relevant, but less so where defendants' motion is premised on their own breach of contract action and a *pro se* party may have difficultly properly evaluating the value of his or her claim. Considering both the award of $4,500.00 and, to a lesser extent, the

---

[4] This number accounts for 47 hours at $300.00 an hour by Ms. Perlioni and Mr. Joyner, resulting in $14,100.00 in fees; 47.3 hours at $225.00 an hour by Mr. Elliott and Mr. McKnight, resulting in $10,642.50 in fees; and 5.7 hours at $120.00 an hour by Ms. Musick, Mr. Nabers, and Ms. Wooten, resulting in $684.00 in fees.

successful defense of a claim for $46,611.80, an award of $133,689.50 in attorneys' fees is patently unreasonable.

A fee award of $25,426.50, previously calculated based on the time reasonably spent on this case based on the hourly fees generally charged in this locality, is more closely aligned with the amount involved. Although $25,426.50 remains a significant fee for obtaining a mere $4,500.00 in damages, or even successfully defending against a claim worth less than $50,000, the court is not inclined to further reduce this reward where it remains within the realm of reasonableness.

4. Additional Arthur Andersen Factors

The court has also considered the experience, reputation, and ability of defendants' counsel. From the evidence presented and the success obtained by defendants, it is clear that the individuals involved in this matter were experienced and competent attorneys familiar with employment law and ERISA. The court does not doubt that counsel as knowledgeable and skilled as defendants' attorneys here can command the kind of fees billed in this matter. But as plaintiff colorfully points out, the "reasonableness" of claimed fees may take into consideration whether a party has "gold-plated" the legal response to a *pro se* complaint. Regardless of this argument, however, the court does not find the experience and talent of defendants' counsel to outweigh the other factors the court has taken into consideration in fashioning a reasonable fee.

The court has not considered or has given minimal weight to the remaining Arthur Andersen factors, including preclusion from other employment, the fixed nature of the fee (as opposed to a contingency fee), any time limitations placed on defendants' attorneys, or the nature and length of the attorneys' professional relationship with defendants. As to each of these four factors, there was either no evidence presented, nothing in the record to guide the court's analysis, or the record and

10

Case 5:09-cv-00186-FL   Document 113   Filed 12/29/10   Page 10 of 12

evidence presented did not present a compelling case for consideration of the factor in the circumstances of this case.

     5       Availability of Fees in ERISA Actions

In addition to the factors enumerated above, the court considers whether attorneys' fees would have been available to defendants under ERISA.[5] Pursuant to 29 U.S.C. § 1132(g)(1), the court in its discretion may award attorneys' fees to a party in an ERISA action achieving "some degree of success on the merits." Williams v. Metro. Life Ins. Co., 609 F.3d 622, 634 (4th Cir. 2010) (quoting Hardt v. Reliance Std. Life Ins. Co., 130 S. Ct. 2149, 2158 (2010)). In exercising this discretion, the court considers: (1) any bad faith by the opposing party, (2) the ability of the opposing party to satisfy an award of attorneys' fees, (3) whether an award of attorneys' fees would deter other persons acting under similar circumstances, (4) whether the requesting party sought to benefit all participants in a plan or to resolve a significant question of law regarding ERISA itself, and (5) the relative merits of the parties' positions. Id. at 635 (citing Quesinberry v. Life Ins. Co. of N. Am., 987 F.2d 1017, 1029 (4th Cir. 1993) (en banc)).

Based on these factors, defendants would not have been able to recover any fees for defending against plaintiff's ERISA action. There has been no showing of bad faith, plaintiff is almost certainly unable to satisfy an award of attorneys' fees, this action did not involve a significant question of law regarding ERISA itself, and the case was adjudicated on procedural grounds rather than the underlying merits of the ERISA claim. The fact that the court would not have awarded

---

[5] Although defendants have moved for attorneys' fees only with respect to their breach of contract action, their request necessarily includes fees associated with defense of the ERISA action where the costs of this defense are directly related to plaintiff's breach. See Am. Home Assur. Co. v. United Space Alliance, LLC, 378 F.3d 482, 494 (5th Cir. 2004) (noting that Texas law does not require segregation of attorneys' fees where the claims arise out of the same facts or transaction and the prosecution or defense of each entails proof or denial of the same facts); see also Defs.' Mot. Summ. J. Ex. M. ¶ 12.

11

attorneys' fees under ERISA does not diminish the mandatory award of attorneys' fees under Texas law. But this fact does inform the court as to reasonableness of the fees claimed because, absent defendants' counterclaim, defendants would have received no attorneys' fees for their defense of the ERISA suit.

## CONCLUSION

For the reasons set forth above, defendants' motion for attorneys' fees (DE # 104) is GRANTED in part and DENIED in part. Defendants are entitled to costs and reasonable attorneys' fees, but fees in excess of $130,000.00 are not reasonable or appropriate in this case. After a careful consideration of all relevant factors, the court finds that defendants are entitled to the sum of $25,426.50 in attorneys' fees. Defendants are also entitled to the sum of $990.70 in costs.

SO ORDERED, this the 28th day of December, 2010.

LOUISE W. FLANAGAN
Chief United States District Judge